# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ALICIA D. LEWIS-JOHNSON, | ) CASE NO. 1:20-CV-1260 |
| Plaintiff, | ) |
| v. | ) JUDGE DAVID A. RUIZ |
| KILOLO KIJAKAZI, | ) |
| *Acting Comm'r of Soc. Sec.*, | ) **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) |

Plaintiff, Alicia D. Lewis-Johnson (Plaintiff) challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. (Act). This case is before the undersigned United States District Judge pursuant to United States District Court Northern District of Ohio General Order 2022-03.[2] For the reasons set forth below, the Commissioner's final decision is REVERSED AND REMANDED for proceedings consistent with this order.

## I. Procedural History

On May 17, 2016, Plaintiff applied for SSI, alleging a disability onset date of January 1, 2016. (R. 15, Transcript (Tr.) 208-215). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).
[2] This case was originally before the undersigned as a United States Magistrate Judge pursuant to consent of the parties. (R. 16, R. 17).

(Tr. 137-142, 207). Plaintiff participated in the hearing on January 17, 2019, was represented by counsel, and testified. (Tr. 42-78). A vocational expert (VE) also participated and testified. *Id*. On April 8, 2019, the ALJ found Plaintiff not disabled. (Tr. 12-33). The Appeals Council denied Plaintiff's request to review the ALJ's decision on April 13, 2020, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 19, 21, 22).

Plaintiff asserts the following assignments of error: (1) The ALJ erred when evaluating the treating specialist opinion, and (2) Plaintiff's residual functional capacity is not supported by substantial evidence. (R. 19, PageID# 1626).

## II. Evidence

### A. Relevant Medical Evidence[3]

1. **Treatment Records**

Three months before Plaintiff's January 1, 2016 alleged onset date, Rheumatologist David S. Stadnick, M.D., diagnosed Plaintiff with an undifferentiated connective tissue disease, bilateral carpal tunnel syndrome, bilateral chondromalacia of the knees, and a history of Raynaud's disease, on September 2, 2015. (Tr. 662-663). Dr. Stadnick prescribed wrist splints, physical therapy, and Meloxicam. (*Id*.) Plaintiff had full range of motion in her wrists, with tenderness in her wrist and metacarpophalangeal (MCP) joints; she could make a tight fist

---

[3] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

bilaterally and maintained "-5/5" handgrip strength bilaterally. (Tr. 663). Plaintiff's hands appeared unremarkable on x-rays taken on September 2, 2015. (Tr. 657).

On April 27, 2016, Dr. Stadnick observed Plaintiff's continued wrist tenderness, with good range of motion, finger tenderness without swelling, bony enlargements on her thumbs, positive patellar apprehension bilaterally and medial joint line tenderness bilaterally. (Tr. 643). X-rays taken at that time demonstrated early signs of osseous arthritis in the trapezium scaphoid joints and joints of both thumbs. (Tr. 643-644). Bloodwork results, in May 2016, remained consistent with an undifferentiated connective tissue disease. (Tr. 643-44, 650-51).

On September 27, 2016, Plaintiff told Dr. Standnick that five days earlier she developed joint pain, stiffness and swelling in her hands, elbows, wrists, shoulders and knees. (Tr. 1295). The doctor observed Plaintiff had pain and swelling in her left hand and could not make a fist. Dr. Stadnick diagnosed Plaintiff with an acute onset of inflammatory polyarthropathy and prescribed steroid injections and oral steroids. *Id*.

On October 12, 2016, Plaintiff reported that the injections helped a great deal, and requested additional options to manage her pain when the shots wear off (Tr. 1292). Dr. Stadnick prescribed Methotrexate and folic acid. *Id*.

During appointments on November 15, 2016 and December 29, 2016, Dr. Stadnick increased methotrexate dosage and described Plaintiff as able to make bilateral loose fists, with continued swelling, tenderness and reduced range of motion in her MCP joints, proximal interphalangeal (PIP) joints, hands and wrists. (Tr. 1284-89).

During appointments on March 30, 2017 and April 18, 2017, Dr. Stadnick documented Plaintiff's complaints of pain and continued tenderness to palpitation in her bilateral wrists, MCP and PIP joints. (Tr. 1278, 1281). Dr. Stadnick added Plaquenil during the March 2017

appointment, but the record notes Plaintiff did not tolerate the medication change due to side effects. (Tr. 1274, 1278, 1281).

On June 28, 2017, Plaintiff presented to Dr. Stadnick in a wheelchair and reported she had stopped taking Methotrexate six weeks earlier. (Tr. 1274). Plaintiff reported her husband had to help her with dressing. Dr. Stadnick observed Plaintiff's "hands show synovitis of the wrists and MCP [joints] and PCP [joints]" and noted "Patient's condition is now severe." *Id.* Dr. Stadnick restarted Plaintiff on Methotrexate and started Tylenol 3, however, Methotrexate caused liver complications and Plaintiff discontinued the medication in September 2017 at Dr. Stadnick's request, and he noted hand and finger pain without synovitis. (Tr. 1269-1271, 1274). In October 2017, Dr. Stadnick recorded Plaintiff's complaints of pain in all four extremities, and noted "inspection of the fingers reviewed not gross synovitis." (Tr. 1266).

In March 2018, Plaintiff reported that the 90-day treatment of Humira helped a great deal, although she continued to experience morning stiffness, joint pain, finger swelling, dry eyes and dry mouth. (Tr. 1262-64). Plaintiff noted "she still has some swelling and stiffness in her joints from time to time but…it is nothing she cannot deal with"; her wrist range of motion remained limited, MCPs and PIPs were not tender or swollen, and she could make a loose fist bilaterally. *Id.*

On August 23, 2018, Plaintiff reported Humira continued to provide symptom relief, but she remained in pain and struggled to get out of bed due to stiffness. (Tr. 1259). Plaintiff had diminished wrist flexion and extension bilaterally, and tenderness to palpation in the wrists, MCP and PIP joints. (Tr. 1259). She could make a loose fist. (Tr. 1259-1260). On September 10, 2018, Plaintiff reported "several days [before] she developed a flare of her arthritis and now multiple joints are involved with extreme pain and stiffness." (Tr. 1254). Dr. Standnick observed

"[i]nspection of the hands reveals mild synovitis in the MCPs and PIPs bilaterally" and he treated her with leflunomide, methylprednisolone, and IM corticosteroid injections. (Tr. 1254-55).

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On August 26, 2016, State agency medical consultant Dimitri Teague, M.D., evaluated the medical records and, citing "idiopathic syncope physical vs. psychogenic (physical workup neg thus far) EEG neg, head CT neg, [t]ilt table neg, (pacemaker placed for Type II Mobitz AV Block," opined Plaintiff can lift/carry 20 pounds occasionally and 10 pounds frequently, sit about six hours in an eight-hour workday and stand/walk about four hours in an eight-hour workday. (Tr. 106). Dr. Teague opined Plaintiff can never crawl, climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; frequently balance; occasionally kneel, stoop, or crouch, due to Plaintiff's "idiopathic syncope physical vs. psychogenic(physical workup neg thus far)." (Tr. 106-07). In addition, citing Plaintiff's aforementioned syncope, in addition to asthma and COPD, Dr. Teague opined Plaintiff must avoid concentrated exposure to extreme heat, cold, humidity, fumes and all exposure to hazardous heights or unprotected scaffolds. *Id*.

On August 23, 2016, State agency psychologist Irma Johnston, Psy.D., evaluated the record and assessed Plaintiff's social interactions were "limited due to depressed mood" and she was "unable to interact with the general public" while she "can relate infrequently and only superficially with supervisors and co-workers." (Tr. 109).

Both State agency psychologist Janet Souder, Psy.D., and State agency medical consultant Leigh Thomas, M.D., concurred with the respective prior State agency opinions, on April 11, 2017. (Tr. 128-132).

On January 9, 2019, David Stadnick, M.D., provided a "Medical Source Statement: Physical Abilities and Limitation" concluding Plaintiff is able to work zero hours in a typical day because her "symptomatology at this time is so great it precludes remunerative employment." (Tr. 1524). If she were to work, "pain, stiffness and swelling" of her joints will result in absences. *Id.* Dr. Stadnick opined Plaintiff could stand/walk ten minutes at one time and zero hours in an eight-hour period with intermittent breaks; and she could sit thirty minutes at one time (and zero hours in an eight hour period), changing positions every thirty minutes,. (Tr. 1524-1525). Pain and stiffness of upper extremity joints limited Plaintiff's ability to lift, carry and reach. *Id.* Plaintiff could occasionally lift two pounds and frequently lift one pound. He opined she could occasionally reach bilaterally, rarely handle bilaterally and rarely finger bilaterally due to pain and joint stiffness in her hands. (Tr. 1525). Dr. Stadnick concluded "The patient's pain would be a constant distraction for the patient, thus she would not be able to concentrate on her work." *Id.*

**B. Relevant Hearing Testimony**

During the January 17, 2019, hearing, Plaintiff testified as follows:

- She had lived with her mother, who cared for herself and paid the household expenses. (Tr. 50). Since her mother passed away, she has stayed with friends, moving from "place to place." (Tr. 51).

- A connective tissue disorder "causes [her] body to shut down" and the only thing she is "able to move is [her] mouth." (Tr. 51). This happens three-to-four times per month and can last three and one-half to four hours before she can "move around." (Tr. 51-52).

- She experiences constant joint pain that stops her from moving her hands and walking. Humira "nulls" her pain in combination with shots to her hip joints. (Tr. 52-53). Over the course of three years, she has used a wheelchair four or five times to attend an appointment. (Tr. 54).

6

- She can stand 30-minutes and will need to sit for 10-15 minutes, before standing again. She can walk one block if it is straight, but she cannot go around the block. (Tr. 55).

- She takes Humira, steroids, Arava, Breo, Ventolin, albuterol and uses marijuana. (Tr. 57-58).

- Her fatigue improved when she got a pacemaker. (Tr. 63).

- She cannot use her hands to write, type or button buttons because they hurt or are numb. She is not able to hold a cup of coffee or use silverware because she drops items. She uses plastic cutlery. (Tr. 64-65).

- A good day is being able to get up and get out of bed and not have something that hurts. (Tr. 68). In a typical week, she has two good days and five bad days. (Tr. 69).

- In a typical day she spends a lot of time at the library. (Tr. 69). She receives gift cards from the police department. *Id*.

(Tr. 50-69).

During the administrative hearing, the ALJ posed the following hypothetical question to the VE:

> If I found that Ms. Lewis was capable of lifting, tearing [sic], pushing, pulling 20 pounds occasionally, 10 pounds frequently, sit for six hours out of an eight hour work day, stand and walk for four hours out of an eight hour work day, with only occasional climbing, or ramps, and stairs, but never any ladder, rope, or scaffold. Frequent balance, occasional stoop, kneel, and crouch, but never crawl. She'll (INAUDIBLE) no exposure to moving machinery or unprotected heights. Occasional exposure to dust, fumes, gases, temperature extremes, and humidity. And she retains -- and she is able to respond appropriately to supervisors and coworkers in a task oriented setting with no public contact, and occasional interaction with coworkers. Would she be able to return to any of that previous employment?

(Tr. 72).

The VE testified that such an individual could not perform Plaintiff's past work. The VE continued that such an individual, with the combination of limitations, could perform unskilled

7

light exertional level work including office helper clerical assistant DOT #239.567-010 with an SVP of 2, unskilled and 83,250 jobs nationally. The individual could work as a mail room clerk DOT #209.687-026 with an SVP 2, unskilled and 24,770 jobs nationally. In addition, the VE testified that the person could work as a cafeteria attendant DOT #311.677-014 with an SVP 2, unskilled, and 24,770 jobs nationally. (Tr. 73).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed

impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since May 17, 2016, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: asthma, chronic obstructive pulmonary disease (COPD), heart arrhythmia, undifferentiated connective tissue disease, transient alteration of awareness/syncope, depression, generalized anxiety disorder, PTSD, borderline personality disorder, right carpal tunnel syndrome, trigger finger of the left hand, and right foot (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) subject to the following limitations: standing and/or walking four hours in an eight-hour workday; occasional climbing of ramps or stairs; never climbing ladders, ropes, or scaffolds; occasional stooping, kneeling, and crouching; never crawling; no exposure to moving machinery or unprotected heights; occasional exposure to dust, fumes, and gases; occasional exposure to temperature extremes and humidity; and able to respond appropriately to supervisors and coworkers in a task-oriented setting with no public contact and occasional interaction with coworkers.

5. The claimant is unable to perform any past relevant work (20 CFR 404.965).

6. The claimant was born on ***, 1974 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 17, 2016, the date the application was filed (20 CFR 416.920(g)).

(Tr. 18, 20, 31-3).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

B.  **Plaintiff's Assignments of Error**

Plaintiff's first assignment of error asserts the ALJ erred when evaluating and weighing the opinion from treating specialist Dr. Stadnick, and by failing to discuss the length and nature of Dr. Stadnick's relationship with Plaintiff. (R. 19 Page ID# 1625; *see also* R. 22 Page ID# 1651, 1653). The Commissioner counters that the ALJ's decision provides good reasons for discounting the opinion evidence. (R. 21, PageID#1641).

Although the "treating physician rule" was eliminated by a change in Social Security regulations that applies to all claims filed after March 27, 2017, Plaintiff filed her disability claim on May 17, 2016. (Tr. 208-215). Therefore, the treating physician rule applied; and as explained herein, the ALJ erred when considering that rule and failed to provide good reasons for discounting Plaintiff's treating physician's opinion concerning Plaintiff's ability to handle, finger and feel.

Pursuant to the treating physician rule, "[p]rovided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does

11

not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F.Supp.3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.).

In addition, it is well-established that administrative law judges may not make medical judgments. As such, "judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor." *Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of

the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (citing *Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ, in this case, discussed Plaintiff's treatment with Dr. Stadnick from September 2, 2015 through 2018 (Tr. 23-25) and described Dr. Stadnick as Plaintiff's "treating rheumatologist," which the Commissioner does not challenge. (Tr. 29; R. 21, PageID# 1643). Outlining the treating physician's rule, the ALJ's decision stated:

> If a treating source's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. However, controlling weight may not be given to a treating source's medical opinion unless the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with the other substantial evidence in the record (20 CFR 416.927).
>
> In deciding whether or not to adopt the treating source's opinion in this situation, the following factors are to be considered along with any other appropriate factors: the examining relationship, the treatment relationship in terms of its frequency and duration, supportability, consistency, and specialization. Particular attention is to be given to the consistency of the opinion with other evidence, the qualifications of the source, and the degree to which the source offers supporting explanations for the opinion (20 CFR 416.927).

(Tr. 29-30).

The ALJ then described Dr. Stadnick's January 9, 2019 opinions as follows:

> Treating rheumatologist David Stadnick, M.D. completed a Medical Source Statement: Physical Abilities and Limitation on January 9, 2019 (Exhibit B58F). Dr. Stadnick opined that the claimant could do no work, secondary to pain, stiffness, and swelling of the joints. She could stand/walk for ten minutes at a time and for zero hours total in an eight-hour workday. She could sit for 30 minutes at a time and for zero hours total in an eight-hour workday. She could lift/carry two pounds occasionally and one pound frequently. **She could rarely or could not effectively finger or handle with the bilateral hands. She could occasionally**

13

> **reach bilaterally.**

(Tr. 30 (emphasis added)). In further discussing Dr. Stadnick's opinions, the ALJ reasoned:

> Applying the above principles, the undersigned finds that Dr. Stadnick's opinions are not entitled to controlling or deferential weight under the regulations, as they are not fully supported by the record. The totality of this assessment significantly overstates the claimant's limitations. **While she had pain, stiffness, and swelling in her hands, the records show that medication adjustments had significantly improved her symptoms, and she reported that she could tolerate her symptoms with medications.** Despite reports of joint pain in the lower extremities from her undifferentiated connective tissue disease, **physical examinations generally only showed objective findings related to the hands**. Examinations do not support an inability to work or such significant limitations in physical functioning. This assessment appears to be based on the claimant's subjective reports, which are simply not consistent with the evidence of record. Therefore, the undersigned gives little weight to the opinions of Dr. Stadnick.

*Id.* (emphasis added). This assessment, however, does not satisfy the treating physician rule.

Reading the ALJ's decision as a whole, it is apparent the ALJ considered Dr. Stadnick's opinions in a conclusory manner that lacked sufficient explanation supported by good reasons citing to record evidence. (Tr. 30). The ALJ's assessment of Dr. Stadnick's opinions lacks a meaningful function-by-function analysis, fails to provide specific citations to supporting records or evidence inconsistent with the provider's opinions, and fails to articulate a meaningful evaluation of the Dr. Stadnick's opinions that Plaintiff "could rarely or could not effectively finger or handle with the bilateral hands[,]" and by extension that she could "lift/carry two pounds occasionally and one pound frequently." (Tr. 30). The court would need to speculate to determine the specific reasons the ALJ found no manipulative limitations in light of record evidence demonstrating Plaintiff had a reduced range of motion, swelling, pain and tenderness in PIP, MCP, and wrist joints as described in the ALJ's analysis. (Tr. 23-25, 30). The court cannot find that the ALJ adequately articulated good reasons for discounting the opinions.

14

Although the Commissioner defends the underlying decision discounting the opinions of "treating rheumatologist Dr. Stadnick" and contends it contains a "robust, detailed examination of the relevant record evidence" (R. 21, PageID# 1643), the defendant's argument is not well-taken. In seeking to discredit the doctor's opinions, the Commissioner states, "[f]or example, the ALJ reasonably found that Dr. Stadnick's findings generally concerned Plaintiff's hands, thus his opinions that Plaintiff was extremely limited in her ability to sit and stand based on his observations was inconsistent with the record evidence." (R. 21, PageID# 1643, citing Tr. 30). This acknowledgment of the doctor's objective observations of Plaintiff's hands, however, supports Plaintiff's argument that the ALJ's conclusory evaluation failed to provide good reasons for dismissing Dr. Stadnick's opinion regarding manipulative limitations.

The Commissioner's reliance on *Champion v. Comm'r of Soc. Sec.* is misplaced. (R. 21, PageID# 1644). 2019 WL 441561, at *5 (S.D. Oh. Feb 5, 2019). The *Champion* court stated, "[a]s noted by the ALJ, despite his extreme functional limitations, Dr. Rorick's examinations consistently produced normal findings" and the claimant was "able to control her pain with the pain medication regimen[.]" *Id.* In this case, the ALJ's discussion of the record evidence demonstrates that Plaintiff did not experience sustained improvement. (Tr. 23-25). Moreover, the ALJ's discussion of Dr. Stadnick's records and objective findings reflect abnormal findings including: Plaintiff's tenderness to palpitation in MCP joints (Tr. 23); Plaintiff's changing ability to make a fist with her bilateral hands (Tr. 23-24); signs of osteoarthritis in the scaphoid joints, MP joints and IP joints (Tr. 23); and joint swelling. (Tr. 24). While the ALJ indicates Plaintiff's hand symptoms improved with medication (Tr. 30), that conclusion lacks sufficient explanation and citation to enable the court to determine which record appointment(s) it refers to and thereby prevents a meaningful review of those and subsequent records to determine whether they

15

constitute good reasons. (Comp. Tr. 23-25 with 30).

In addition, the Commissioner asserts that the ALJ found proper support for the underlying decision from the opinions of the aforementioned non-treating state agency consultants, Dr. Teague and Dr. Thomas. (R. 21, PageID# 1641-42 *citing* Tr. 29). The Commissioner notes that "Plaintiff also suggests…that the ALJ erred by giving significant weight to the reviewing medical consultants' opinions because they were rendered in August 2016 and April 2017[.]" (*Id*. at 1642-43). Indeed, Dr. Teague and Dr. Thomas rendered their opinions before the majority of Dr. Stadnick's treatment, and neither referenced Plaintiff's connective tissue disorder while opining Plaintiff had no manipulative limitations. (R. 22, PageID# 1653-1655; Tr. 106-108, 127-129). The significance of that omission is more prominent when considering the ALJ stated "The evidence show that the claimant's undifferentiated connective tissue disorder most significantly affected the claimant's hands." (Tr. 25).

The Sixth Circuit has explained that a matter should not be remanded where the plaintiff cannot establish that "a ruling was anything but harmless error," noting the futility of "sending the case back to the ALJ" where it would not "serve any useful purpose …." *Kobetic v. Comm'r of Soc. Sec*., 114 Fed. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'") (*quoting NLRB v. Wyman–Gordon Co*., 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)). However, in this instance, the ALJ failed to provide good reasons for discounting Dr. Stadnick's opinion and the failure to clearly elaborate rationale for rejecting the treating source's manipulative limitations is not without harm. *Wilson,* 378 F.3d at 544. The ALJ did not include any manipulative limitations in the hypothetical question to the VE; and, consequently, the VE provided no testimony regarding the impact of any manipulative

16

limitations on a hypothetical individual's ability to perform work activities in the national economy. (Tr. 32-33, 72-78).

The court, therefore, finds that the ALJ erred by failing to provide good reasons for discounting Dr. Stadnick's opinion regarding hand and finger limitations. While this court's decision renders no opinion regarding the merits of Plaintiff's disability claims or how the underlying records and opinion evidence should be weighed on remand, the Commissioner will have an opportunity, upon remand, to consider such issues and to also assess the Plaintiff's second assignment of error—contending that the ALJ erred when evaluating Plaintiff's residual functional capacity, especially as it relates to manipulative limitations. (R. 19, PageID# 1626). Consequently, the court declines to consider Plaintiff's second assignment of error, as remand is appropriate.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is REVERSED AND REMANDED for proceedings consistent with this opinion.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: March 30, 2022